THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DeNORRIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-824-WKW[WO] |
| | ) | |
| ALABAMA DEP'T OF CORRECTIONS, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff DeNorris Williams ("Williams") is a former inmate of the Alabama Department of Corrections ("ADOC").  For seven months of his confinement, he earned wages working for private employers through the ADOC's voluntary work-release program.  Like all work-release inmates, Mr. Williams did not retain all of his earnings.  Pursuant to a state statute and department policy, the ADOC deducted forty percent of Mr. Williams's earnings as costs incident to his confinement and charged him an additional fee for transportation to and from the job site.

Mr. Williams brings this 42 U.S.C. § 1983 suit as a putative class action against the ADOC and Commissioner Richard Allen for monetary and injunctive relief.  He alleges that the ADOC work-release inmates have a constitutionally protected property interest in the funds deducted from their earnings for transportation fees and that the assessment of transportation fees is a taking without just compensation, in violation of the Fifth

Amendment to the United States Constitution.  Mr. Williams also appends claims for violations of state constitutional and statutory law.

The parties have agreed to resolve the liability issue before presenting evidence on damages or class certification.  (Docs. # 40-43.)  Based upon that agreement, an Order was entered setting a briefing schedule on the issue of liability.  (Doc. # 43.)  The relevant facts have been stipulated (Doc. # 44), and the issue of liability has been fully briefed (Docs. # 45, 46, 47, 48, 50, 51, 54).  In his brief, Mr. Williams reiterates that the issues to be decided are solely issues of law.  Defendants take the same position, but raise the legal issues through a motion for summary judgment.[1]  (Doc. # 48.)

Because property rights protected by the Fifth Amendment's Takings Clause are generally defined by state law, the parties' briefs bring to the forefront the issue whether § 14-8-6 of the Alabama Code grants ADOC work-release inmates a property right in the transportation fees deducted from their earnings.  Section 14-8-6 authorizes the ADOC to withhold from a work-release inmate's earnings "the cost incident to the inmate's confinement," but provides that "[i]n no event shall the withheld earnings exceed 40 percent of the earnings of the inmate."  Ala. Code § 14-8-6.  Whether the transportation fee is a cost of confinement and whether it is subject to § 14-8-6's forty-percent cap is directly at issue

---

[1] Where there are no genuine issues of material fact, the moving party is not guaranteed the entry of judgment, as application of the law to the undisputed facts could result in judgment for the party opposing the motion.  *See* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3d, § 2725.  Hence, the fact that Defendants, and not Mr. Williams, filed a motion for summary judgment does not the tilt the scale in favor of Defendants on the issue of liability.

in a pending state court proceeding, with the Alabama Court of Civil Appeals having answered in the affirmative. *See Ala. Dep't of Corr. v. Merritt*, No. 2081084, 2010 WL 2471035 (Ala. Civ. App. 2010). That ruling presently is the subject of an application for rehearing. Notwithstanding the pendency of *Merritt*, the parties urge the court to decide the underlying statutory question whether the ADOC's collection of transportation fees violates § 14-8-6, on the ground that *Merritt* "is presently not legally binding authority." (Doc. # 57, at 2.)

Neither party has requested abstention on the basis that a state court presently has before it identical issues of state statutory construction,[2] or certification.[3] There are, however, multiple considerations that would appear to weigh in favor of each, including "federal-state comity, constitutional avoidance, judicial efficiency, [and] the desire to settle correctly a recurring issue of state law," all of which "transcend the interests of individual litigants." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 778 n.6 (2005) (Stevens, J., dissenting).

While the court would have had serious reservations about plowing ahead on the merits, it has determined that the merits need not be reached. In support of their motion,

---

[2] *See, e.g., Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976) ("Abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." (internal quotation marks and citation omitted)).

[3] "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law." *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005).

Defendants raise non-constitutional issues – namely, Eleventh Amendment immunity, qualified immunity, and the absence of irreparable injury – that are dispositive of and preclude a merits determination on the § 1983 Fifth Amendment Takings claim.  On these grounds, summary judgment is due to be entered in favor of Defendants on the federal law claims.  Supplemental jurisdiction over the state law claims is due to be declined, and the state law claims are due to be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).  Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In this case, because the material facts are not in dispute, the broad issue is whether Defendants have shown that they are entitled to judgment as a matter of law.

4

## IV.  BACKGROUND

**A.**  <u>**Facts**</u>

The undisputed salient facts are as follows.  (*See* Doc. # 44 (Stipulation of Facts).)
Mr. Williams was an ADOC inmate from approximately November 2006 through May 2007,
serving his time at the Camden Community Based Facility in Camden, Alabama.  While
incarcerated, Mr. Williams voluntarily participated in a work-release program, operated by
the ADOC.  Inmates in this program are allowed to leave the prison "unaccompanied by a
custodial agent for a prescribed period of time to work at paid employment" for a private
entity.  Ala. Code § 14-8-2(a).  While incarcerated, Mr. Williams worked for two lumber
companies.  He used the ADOC's transportation services to travel to and from his place of
employment, at a charge of $2.50 one way (or $5.00 per round trip).[4]

Work-release inmates do not have unrestricted access to their earned wages.  Nor are
they entitled to retain all of their earnings.  As prescribed by state statute, the employer of
a work-release inmate "pay[s] the inmate's wages directly to the [ADOC]."  Ala. Code
§ 14-8-6.  The ADOC is then "authorized to withhold from [the] inmate's earnings the cost
incident to the inmate's confinement as [it] shall deem appropriate and reasonable," but "[i]n
no event shall the withheld earnings exceed 40 percent of the earnings of the inmate."  *Id.*
"After all expenses have been deducted by the [ADOC]," it deposits the remainder in the

---

[4] Work-release inmates may use public or employer-provided transportation to and from their
places of employment.  When those modes of transportation are unavailable, as was the case for Mr.
Williams, the ADOC provides transportation for a charge.

inmate's Prisoner Money on Deposit ("PMOD") account, which is paid to the inmate upon his release.  Ala. Code § 14-8-6.

Section 14-8-6 also authorizes the ADOC to adopt regulations addressing disbursement of work-release earnings; ADOC's Administrative Regulation No. 410 is the product of that statutory authority.[5]  It governs the work release program, and among other things, provides for a deduction from an inmate's work-release earnings for transportation fees when an ADOC vehicle is used.[6]  (Ex. 1 to Doc. # 47.)  Administrative Regulation No. 410, which reflects the ADOC's interpretation of § 14-8-6, permits transportation and other fees to be charged to inmates, after forty percent of their earnings have been withheld, so long as the fees are not incident to the inmate's confinement.

The ADOC withheld forty percent of Mr. Williams's gross earnings from each of his paychecks.  Also, because Mr. Williams used the ADOC's transportation services for travel to and from his place of employment, the ADOC charged him $2.50 one way (or $5.00 round trip).  The transportation fees were deducted from Mr. Williams's PMOD account, on top of

---

[5] Administrative Regulation No. 410 also incorporates § 14-8-6's maximum percentage for withholdings for "cost incident to the inmate's confinement," which presently is forty percent, but prior to October 1992 was thirty-two and one-half percent.  *See generally Ala. Dep't of Corr. v. Merritt*, No. 2081084, 2010 WL 2471035, at *1 & n.6 (Ala. Civ. App. 2010) (discussing Administrative Regulation No. 410 and its recent amendment).  Until recently, Administrative Regulation No. 410 tracked the percentage from the former version of § 14-8-6.  In the complaint, Mr. Williams does not seek relief based upon the lower percentage cited in the former version of Administration Regulation No. 410.

[6] As stipulated by the parties, "[t]he Alabama Department of Examiners of Public Accounts has concluded, through at least a few audits, that it appears that the [ADOC] does not have the legal authority to charge the transportation fees and that the [ADOC] should only charge fees authorized by statute."  (Doc. # 44 ¶ 11.)  Mr. Williams relies principally on this stipulation for his authority that the transportation fees are *per se* illegal.

the forty-percent withholding.  These withholdings and deductions are consistent with the ADOC's policy as to all work-release inmates' earnings.

On September 13, 2007, Mr. Williams filed this class action complaint on behalf of all former Alabama prison inmates who participated in a work-release program administered by the ADOC from January 2001 until present, and who worked for private entities and were paid wages. (Compl. ¶ 4.)   Mr. Williams brings a 42 U.S.C. § 1983 cause of action, alleging that Defendants violated the Fifth Amendment to the United States Constitution, first, by deducting any transportation fees from work-release inmates' PMOD accounts, and second, by charging transportation fees in excess of the forty-percent limitation set out in § 14-8-6. (Compl. ¶ 17.)  The transportation fee, according to Mr. Williams, also violates Article I, § 23 of the Alabama Constitution of 1901, which requires the state to award just compensation for property taken by eminent domain.  (Compl. ¶ 17.)  Furthermore, Mr. Williams alleges that, by withholding "more than 40% of [work-release inmates'] paychecks," Defendants violated § 14-8-35 of the Alabama Code.[7]  (Compl. ¶ 18.) On behalf of himself and the putative class, Mr. Williams seeks class certification, a permanent injunction, reimbursement of all transportation fees (or, alternatively, reimbursement of transportation costs taken in excess of § 14-8-6's forty percent cap), interest, punitive damages, attorney's fees, and costs.  (Compl. 8.)

---

[7] Section 14-8-35 prohibits "[e]xploitation of eligible [work-release] prisoners in any form . . . , either as it might affect the community, the inmates, the [state] board [of corrections] or the county."  *Id.*

**B.     The State Court Action**

The action in state court was initiated by former and current ADOC inmates who have participated in the work-release program. *See Merritt*, 2010 WL 2471035, at *1. The claims in that lawsuit are more expansive, but there is overlap with this case. In *Merritt*, the ADOC and Commissioner Allen appealed from a judgment that the ADOC "violated [its] regulations by overcharging work-release inmates for transportation costs and by misinterpreting state law by withholding more money from the gross pay of inmates' work-release earnings than it was authorized to do under state law." *Ala. Dep't of Corrs. v. Merritt*, No. 2081084, 2010 WL 2471035, at *1 (Ala. Civ. App. 2010). The Alabama Court of Civil Appeals held that, under § 14-8-6 of the Alabama Code, (1) fees assessed against an inmate for transportation to and from a work-release job are "cost[s] incident to the inmate's confinement," *id.* at *11, thus, rejecting the inmates' argument that the fees are illegal in and of themselves, *see id.* at *16; (2) the forty-percent cap is an absolute cap on the amount of work-release earnings that can be withheld and precludes the ADOC from charging any fee, including transportation fees, in excess of the cap, *id.* at *11-12; and (3) the ADOC is authorized to withhold forty percent of a work-release inmate's gross earnings, rather than net earnings, *id.* at *13.

After the Alabama Court of Civil Appeals issued *Merritt*, this court directed the parties to file a joint status report, indicating their respective positions regarding the legal ramifications, if any, of *Merritt* on the issues pending in this action. (Doc. # 56.) In that

joint status report, the parties represent that in the *Merritt* litigation, "applications for rehearing have been filed with the Alabama Court of Civil Appeals," and that "regardless of the final decision" of that court, one or both parties "will file a petition for writ of certiorari with the Alabama Supreme Court." (Doc. # 57, at 1-2.)  All parties argue that because the court of civil appeals' decision in *Merritt* is not binding authority, this court "remains free to resolve the legal issues now . . . , including whether the [A]DOC could properly deduct forty percent from state work-release inmates' wages as costs of confinement and, then, further deduct a transportation fee from his wages." (Doc. # 57, at 2.)  The parties request this court "to proceed with making a decision on the issues now pending before this Court without waiting for a final resolution in the *Merritt* appeal." (Doc. # 57, at 3.)

## V.  DISCUSSION

As grounds for their motion for summary judgment, Defendants argue that (1) the Eleventh Amendment bars the § 1983 Fifth Amendment Takings claim against the ADOC; (2) the § 1983 claim for money damages against Commissioner Allen in his official capacity is barred by the Eleventh Amendment; (3) Commissioner Allen in his individual capacity is entitled to qualified immunity on the § 1983 claim for monetary damages; (4) Mr. Williams cannot show irreparable injury, as is required to obtain a permanent injunction, given that Mr. Williams no longer is a participant in the work-release program or an ADOC inmate; and (5) the § 1983 claim falls short on the merits.  Mr. Williams presents no argument in rebuttal

to Eleventh Amendment immunity, contests the assertion of qualified immunity, and focuses on the merits of his § 1983 Fifth Amendment Takings claim.

**A.     42 U.S.C. § 1983 Fifth Amendment Takings Claim**

*1.     ADOC*

Mr. Williams has not refuted the ADOC's assertion of Eleventh Amendment immunity, and for good reason.  In the absence of a state's consent to suit or Congress's abrogation of immunity, a suit against a state or one of its agencies is proscribed by the Eleventh Amendment.[8]  *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524-25 (11th Cir. 1990).  "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Alabama v. Pugh*, 438 U.S. 781 (1978) (Actions for injunctive relief against a state or its instrumentalities are not an exception to the Eleventh Amendment bar.).  For § 1983 actions, "Alabama has not waived its Eleventh Amendment immunity," and "Congress has not abrogated Alabama's immunity."  *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997).  Based upon these principles, the ADOC is a state agency that is immune from suit in federal court by virtue of the Eleventh Amendment.

---

[8] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.

2.    *Commissioner Allen*

a.    **Official Capacity**

Commissioner Allen also raises the Eleventh Amendment as a jurisdictional bar to the § 1983 claims against him in his official capacity.  (Doc. # 47, at 8-9.)  The Eleventh Amendment "bar[] [on] damages action[s] against a State in federal court . . . remains in effect when state officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Accordingly, Commissioner Allen is an Alabama state official who is immune from suit as to the § 1983 claim brought against him in his official capacity for monetary damages.

An action for prospective injunctive relief against a state official in his or her official capacity, however, presents an exception to the Eleventh Amendment's proscriptions.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (The Eleventh Amendment is not a bar when a state official is sued for prospective injunctive relief to "'end a continuing violation of federal law.'" (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see also Ex parte Young*, 209 U.S. 123 (1908) (A plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state.).  Hence, as far as the Eleventh Amendment is concerned, the § 1983 claim seeking prospective injunctive relief against Commissioner Allen in his official capacity is not barred.

11

### b.    Individual Capacity

As to the individual capacity claims brought against him, Commissioner Allen raises the defense of qualified immunity. "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation and internal quotation marks omitted). A qualified immunity determination requires evaluation of a multi-part test. First, a defendant must establish that he or she was acting within his or her discretionary authority as a public employee when the conduct in question occurred. *Id.* at 1158. Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). "'Whether a constitutional right was "clearly established" at the time of the violation turns on whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted.'" *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010) (quoting *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006) (internal quotation omitted)). In other words, "'[c]learly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

In previous years, this two-step inquiry had to be conducted in order. That is, the court had to decide whether a constitutional right existed (and whether it was violated) before deciding whether it was clearly established. Now, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

### i.    Discretionary Authority

Mr. Williams contends that Commissioner Allen acted illegally, and thus outside the scope of his discretionary authority, by assessing transportation fees because he asserts that "transportation fees are illegal" under Alabama law. (Doc. # 45, at 14.) Assuming however that transportation fees are legal, Mr. Williams argues that Commissioner Allen acted outside the scope of his discretionary authority when he "authorized the withholding of the maximum percentage stated in § 14-8-6 plus the additional deduction of the subject transportation fee." (Doc. # 50, at 14.) According to Mr. Williams, Commissioner Allen had no discretionary authority to exceed the forty-percent cap in § 14-8-6. (Doc. # 50, at 14; *see also* Doc. # 50, at 15 (arguing that Commissioner Allen's failure to prove that he had legal authority "to deduct a transportation fee after the 40% withholding was done destroys any claim of qualified immunity").)

Mr. Williams is correct that, "[w]hen a government official goes completely outside the scope of his discretionary authority, he ceases to act as a government official and instead acts on his own behalf." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

13

Nonetheless, Mr. Williams's argument misconstrues the nature of the inquiry. "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an 'untenable' tautology." *Id.* What must be asked is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."[9] *Id.* at 1282; *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (To determine whether a government official acted within his or her scope of discretionary authority, "we do not ask whether [a government official] has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities." (citation and internal quotation marks omitted)).

   With these parameters in place, the issue is whether Mr. Allen, as the ADOC commissioner, has authority to implement regulations governing withholdings and deductions from the earnings of inmates who participate in the ADOC work-release program. Clearly he does.

---

   [9] To illustrate the principle, the Eleventh Circuit in *Harbert International* cited prior decisions, including *Jordan v. Doe*, 38 F.3d 1559 (11th Cir. 1994). In *Jordan*, a federal inmate alleged that federal marshals transported him to contract county jails where they knew unconstitutional conditions existed and further violated an agreement governing federal detainees by releasing him into state custody. The inquiry that resolved the discretionary authority issue was not "whether the defendants could place the plaintiff into unconstitutional conditions or improperly transfer him." *See Harbert Int'l*, 157 F.3d at 1283-84. Instead, the court "asked whether their duties included transporting and delivering prisoners." *Id.* at 1284. Because the job functions and authority of federal marshals included delivering inmates in federal custody from one facility to another, the federal marshals met their burden of demonstrating that they were acting within their discretionary authority. *See Jordan*, 38 F.3d at 1566.

Section 14-8-6 provides that the ADOC "may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release," and withhold from those earnings the "cost incident to the inmate's confinement" as "deem[ed] appropriate and reasonable" up to the statutory cap. Ala. Code § 14-8-6. The ADOC is "headed by and under the independent direction, supervision and control of" Commissioner Allen. Ala. Code § 14-1-1.3. Pursuant to § 14-1-1.3, in his capacity as commissioner of the ADOC, Mr. Allen has general supervisory and policymaking authority over the ADOC. That authority necessarily includes the execution of regulations pertaining to disbursement of and withholdings from work-release inmates' earnings, as described in § 14-8-6. Enforcing Administrative Regulation No. 410, which authorizes the deduction of transportation fees from work-release earnings without regard to § 14-8-6's forty-percent limitation, was a valid exercise of Commissioner Allen's discretionary authority to take the steps necessary to carry out the ADOC's work-release program, and to determine which costs are reasonable, appropriate, and "incident to the inmate's confinement." Whether Commissioner Allen got it wrong by assessing transportation fees and concluding that transportation fees were not subject to § 14-8-6's forty-percent cap does not mean that he did not have discretionary authority to make those calls.

When the issue is correctly framed, it is clear that Commissioner Allen satisfies his burden of demonstrating that his conduct was undertaken pursuant to his duties as ADOC's commissioner, and that he was acting within the scope of his discretionary authority when

he allegedly violated Mr. Williams's constitutional rights by deducting transportation fees from his earnings. Accordingly, the burden shifts to Mr. Williams to show that his clearly established constitutional rights were violated.

### ii. Violation of a Clearly Established Constitutional Right

The Takings Clause in the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that "private property shall not be taken for public use without just compensation." *Givens v. Ala. Dep't of Corrs.*, 381 F.3d 1064, 1066 (11th Cir. 2004) (citations and internal quotation marks omitted); U.S. Const. amend. V. A Takings claim requires demonstration of two elements. First, a plaintiff must show "that he possesses a 'property interest' that is constitutionally protected." *Givens*, 381 F.3d at 1066. "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). If there is a property interest stemming from "an independent source such as state law," it must be decided whether that interest "rises to the level of a constitutionally protected property interest." *Roth*, 408 U.S. at 577. Second, "if the plaintiff actually possesses such an interest," it must be "determine[d] whether the deprivation or reduction of that interest constitutes a 'taking.'" *Givens*, 381 F.3d at 1066.

It is not disputed that the ADOC took a portion of Mr. Williams's work-release wages to cover transportation fees in excess of § 14-8-6's forty-percent cap, so the focal point of the present controversy is not on the second element, but rather on the first.  Mr. Williams argues that § 14-8-6 creates a property interest in the funds diverted from his work-release earnings for transportation fees because it requires that the work-release inmate "receiv[e] the 60% balance with no further deductions" and does not authorize deductions for transportation fees.  (Doc. # 45, at 12.)

Commissioner Allen takes a contrary stance.  He asserts that transportation fees are not "cost[s] incident to the inmate's confinement" under § 14-8-6, but rather are employment-related costs that are not subject to the statute's forty-percent cap.  Commissioner Allen argues that the transportation fees are permissible "expenses" under § 14-8-6 and, thus, § 14-8-6 does not create a property interest in the transportation fees withheld from work-release inmates' earnings.  (Doc. # 47, at 7-8.)  While the parties disagree as to the appropriate construction and application of § 14-8-6, they agree that whether and to what extent transportation fees can be deducted from work-release inmates' earnings hinges on § 14-8-6 and is "germane to the issue of whether [Mr.] Williams . . . had a protected property interest in the deducted transportation fees."  (Doc. # 57, at 2-3.)

As framed by the parties, whether Mr. Williams has a property interest, as required to establish a Fifth Amendment Takings claim, depends principally upon whether § 14-8-6 precluded the ADOC from deducting funds from Mr. Williams's work-release earnings for

transportation fees altogether, or above the forty-percent ceiling.  As discussed, this very statutory issue is presently in the throes of state litigation in *Merritt*.  Although the parties urge the court to decide the state statutory question, the qualified immunity test does not require the court to rule first on whether there has been a constitutional violation.  *See Pearson*, 129 S. Ct. at 818.  The circumstances of the case clearly dictate that the better course is to proceed directly to whether there is a clearly established violation of a constitutional right.  This course promotes comity, avoids a potentially unnecessary decision on a constitutional question, and permits the state court to interpret its own state's statute without interference from a federal court in a parallel proceeding.

Distilled to its essence, the dispositive qualified immunity inquiry turns on whether it was clearly established at the time of the alleged unlawful deductions that § 14-8-6 precluded the ADOC from deducting any transportation fees from Mr. Williams's earnings or, alternatively, from collecting transportation fees in excess of § 14-8-6's forty-percent cap. The court turns to whether § 14-8-6 – be it the text itself or relevant interpretative case law – gave Commissioner Allen fair warning in 2006 and 2007 that Mr. Williams had a property interest in the transportation fees deducted from his work-release earnings.  For the following reasons, the court cannot conclude for qualified immunity purposes that, in 2006 and 2007, § 14-8-6 clearly established a property interest in Mr. Williams's earnings deducted for transportation fees.

18

First, while § 14-8-6 permits the ADOC to withhold from an inmate's work-release earnings costs "incident to the inmate's confinement," it does not define what those costs entail.  There is no example or enumeration of a cost that either is or is not "incident to the inmate's confinement," and more specifically, § 14-8-6 does not address whether transportation fees are qualifying costs.  Rather, the statute leaves to the ADOC's discretion to determine "appropriate and reasonable" withholdings.  From the face of the statute, there is no language from which to conclude that § 14-8-6 was sufficiently clear so that Commissioner Allen would have understood that transportation fees could not under any circumstance be deducted from a work-release inmate's earnings.

Second, Mr. Williams has not pointed to any other state statute or preexisting, interpretative case law that concludes that deductions for transportation fees are illegal *per se*.[10]  As discussed below, the judicial construction of § 14-8-6 in *Merritt* was rendered well after Mr. Williams's earnings were reduced to pay for transportation fees.  The court is aware of no prior precedential case applying § 14-8-6 to a case with similar issues as here, and none has been cited.

---

[10] Undercutting Mr. Williams's position that the state law favors his position is the Alabama Court of Civil Appeals' holding in *Merritt* that a transportation fee is a "cost incident to confinement" that the ADOC is authorized to withhold from a work-release inmate's earnings.  With that said, it is recognized that *Merritt* is non-binding and was decided after the deductions had been made from Mr. Williams's work-release earnings.  Also non-binding and unable to clearly establish the state law is the Alabama Department of Examiners of Public Accounts' conclusion during an audit that "it appears that the [ADOC] does not have the legal authority to charge the transportation fees and that the [ADOC] should only charge fees authorized by statute."  (Doc. # 44 ¶ 11.)

Third, as to the issue whether a transportation fee, if authorized by state law, can be deducted once the forty-percent cap in § 14-8-6 has been reached, both the trial court and the Alabama Court of Civil Appeals in *Merritt* have agreed with the inmates that § 14-8-6 does not authorize the ADOC to deduct forty percent of a work-release inmate's wages and then charge a transportation fee on top of that. *See Merritt*, 2010 WL 2471035, at *10-11. All deductions must cease at forty percent. *Id.* But, even if *Merritt*'s reasoning is persuasive, *Merritt* was decided *after* the deductions were made from Mr. Williams's work-release earnings and, thus, was not in the books when Commissioner Allen acted. Moreover, *Merritt* is still pending in the state appellate court system. *Merritt* ultimately may define the property right at issue in this case, but the weight of its authority is currently indeterminate. For these reasons, *Merritt* does not clearly establish the parameters of § 14-8-6 for an official relying upon that statute in 2006 and 2007.

Fourth, it cannot be said that § 14-8-6, standing alone, clearly establishes the law as to whether transportation fees can be deducted on top of the forty-percent cap.[11] Section 14-8-6's silence as to whether transportation fees are costs incident to confinement leaves room for Commissioner Allen's arguments that the term "expenses," as also used in § 14-8-6, is

---

[11] The ADOC withheld forty percent of Mr. Williams's gross work-release earnings, pursuant to § 14-8-6. The issue whether § 14-8-6 permits the forty-percent withholding to be taken from gross or net earnings is raised in Mr. Williams's brief. (*See* Doc. # 45, at 23-24.) In the complaint, however, Mr. Williams does not mention this theory or claim a property interest in the difference between a forty-percent withholding based upon net earnings and a forty-percent withholding based upon gross earnings. Had the issue been properly pleaded, however, it is equally clear, for substantially the same reasons discussed herein, that the law was not clearly established at the relevant time that § 14-8-6 forbids the ADOC from computing the forty-percent withholding based upon gross, rather than net, earnings.

not coextensive with "cost[s] incident to the inmate's confinement," but rather is more expansive, and that the forty-percent cap only applies to the latter. Indeed, in *Merritt*, one justice has agreed with the ADOC's interpretation of § 14-8-6. *See Merritt*, 2010 WL 2471035, at *17-18 (Thompson, P.J., concurring in part and dissenting in part). Even if Commissioner Allen's argument in the end fails to persuade the *Merritt* court, this court cannot say that there was only a single acceptable interpretation of the statute – one contrary to Commissioner Allen's position – at the time of the events at issue in this case.

Fifth, at least one federal district court has interpreted § 14-8-6 in the manner urged by the ADOC, only further underscoring the conclusion that in 2006 and 2007, § 14-8-6 was not capable of clearly establishing a property interest in the deducted transportation fees. *See Ambers v. Allen*, Civ. Act. No. 5:08cv823 (N.D. Ala. March 18, 2010) (memorandum opinion).[12]

In sum, it cannot be found on the basis of § 14-8-6 that Commissioner Allen could have reasonably believed that charging Mr. Williams's transportation fees contravened state

---

[12] In *Ambers*, the court adopted the recommendation of the magistrate judge. The magistrate judge rejected the inmate's argument that "the cost of transporting him to and from his job should be paid out of the forty percent that the ADOC withholds for 'the costs incident to his confinement' and not deducted from his earnings in addition to that forty percent." *Ambers v. Allen*, Civ. Act. No. 5:08cv823, at 7 (N.D. Ala. Aug. 31, 2009) (Magistrate Judge's Report and Recommendation). The magistrate judge pointed out that the inmate "overlooked two other sentences" in § 14-8-6:

> The second sentence in the statute states, "[T]he department may adopt regulations concerning the disbursement of *any* earnings of the inmates involved in work release." (emphasis added). Also the statute states, "[A]fter all expenses have been deducted by the department, the remainder of the inmate's earnings shall be credited to his or her account with the department." It does not say, as the [inmate] tries to argue, "*after forty percent has been deducted for any and all expenses incurred by the inmate, sixty percent of the inmate's earnings shall be credited to his account.*'"

law or that deducting transportation fees on top of § 14-8-6's forty-percent cap from Mr. Williams's earnings violated § 14-8-6. Mr. Williams has failed to show that the asserted property right was clearly established at the time transportation fees were deducted from his work-release earnings. Accordingly, Commissioner Allen is entitled to qualified immunity from Mr. Williams's § 1983 Fifth Amendment Takings claim seeking monetary damages from him in his individual capacity.[13] Because demonstrating a clearly established property right is a prerequisite to overcoming the qualified immunity defense, failure to do so obviates the need to analyze whether the remaining elements of the Fifth Amendment Takings claim were clearly established.

### 3.    *Injunctive Relief*

Mr. Williams seeks a permanent injunction to enjoin Defendants from further violations of the Fifth Amendment's Takings Clause. (Compl. 8.) Defendants argue that Mr. Williams cannot satisfy the elements for obtaining injunctive relief.

To be entitled to a permanent injunction, a plaintiff must demonstrate, among other things, that irreparable injury will result unless the injunction issues. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). Here, it is undisputed that Mr. Williams no longer is participating in the work-release program; in fact, he is no longer in

---

[13] The limited nature of the court's finding bears repeating. The finding should not be construed as suggesting that § 14-8-6 clearly establishes that ADOC work-release inmates have no property interest in the funds diverted for transportation fees. It may be that the final judgment in *Merritt* establishes a property right in the funds taken for transportation fees. The finding herein is merely that the state law was not clearly established that a property right existed in 2006 and 2007, and that is all that is required under *Pearson* to find that Commissioner Allen is entitled to qualified immunity. *See* 129 S. Ct. at 818.

the custody of the ADOC.  If a constitutional wrong occurred when the ADOC withheld and deducted transportation fees from Mr. Williams's work-release earnings, the wrong ended when he ceased participation in the work-release program.  He, thus, does not stand in irreparable harm's way.

In addition, Mr. Williams's claim for a permanent injunction is moot.  "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury."  *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985).  In *Cotterall*, the prisoner's claim for injunctive relief was moot because he was no longer being held in the jail where the conditions were being challenged.  The threatened injury was too speculative – "[T]he most that can be said is that if Cotterall is again incarcerated in a minimum security facility and again charged with a disciplinary infraction, he might again be transferred to Coffee County jail."  755 F.2d at 780 (internal quotation marks and citation omitted); *see also Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001) ("Plaintiff also requested injunctive and declaratory relief in his complaint; however, because he is no longer incarcerated in either Hardeman County Correctional Facility or Whiteville Correctional Facility, these prayers for relief are moot.").

Mr. Williams's situation is analogous to that of the former inmate in *Cotterall*.  First, for any injury to materialize, Mr. Williams would have to find himself back in prison in the custody of the ADOC.  Second, he would have to volunteer for and be accepted into the

23

ADOC's work-release program.  On these facts, a repeated injury is presently neither existing, real nor immediate.  Accordingly, the motion for summary judgment as to Mr. Williams's claim for injunctive relief is due to be granted.[14]

### B.    <u>Supplemental State-Law Claims</u>

Because Defendants are entitled to summary judgment on all § 1983 federal law claims, the court in its discretion declines supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").  Defendants' motion for summary judgment on the state-law claims, therefore, is due to be denied as moot, and the state law claims are due to be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3) & (d).

## VI.  CONCLUSION

Based on the foregoing, it is ORDERED that:

(1)    Defendants' motion for summary judgment (Doc. # 48) is GRANTED on Plaintiff's § 1983 constitutional claims against Defendants;

---

[14] To reiterate, pursuant to the parties' agreement, only the issue of liability presently is before the court.  (*See, e.g.*, Doc. # 40, at 4 (requesting the court to "extend the deadline for class certification in this cause and allow the parties to litigate the liability issue only at this time").)

(2)      Defendants' motion for summary judgment (Doc. # 48) is DENIED as moot

on Plaintiff's supplemental state-law claims, and the state law claims are DISMISSED

without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and

(3)      the Clerk of the Court shall close this case.

An appropriate judgment will be entered separately.

DONE this 30th day of September, 2010.


_____/s/ W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE